IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 31 2006

GARY BLAINE KNIGHT AND CATHY KNIGHT,

        Plaintiffs,

v.

SWIFT TRANSPORTATION CO., INC.,

        Defendant.

CIVIL ACTION NO.
1:05-CV-1060-JEC

## ORDER & OPINION

This case is presently before the Court on Defendant's Motion for Summary Judgment [43]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendant's Motion for Summary Judgment [43] should be **GRANTED**.

## BACKGROUND

The present action arises out of a single-vehicle rollover accident which occurred on February 3, 2005, near the intersection of Georgia Highway 138 and Interstate 20 in Conyers, Georgia. (Def.'s Statement of Material Facts ("DSMF") [43] at ¶ 1.) The only identified witness to the accident was plaintiff Gary Blaine Knight, the driver of the vehicle which rolled over. (Pl.'s Resp. to Defs.'

Statement of Material Facts, etc. ("Resp. DSMF") [47] at ¶ 2.) Mr. Knight alleges that a tractor-trailer pulled in front of his vehicle forcing him off the road and into the rollover accident. (DSMF at ¶ 4.)

Officer Dwayne Jones of the Conyers Police Department spoke briefly with Mr. Knight at the scene of the accident. (*Id.* at ¶ 5.) In shock from his injuries, Mr. Knight was unable to say anything about the accident other than repeating, "a truck." (DSMF at ¶ 6; Resp. DSMF at ¶ 6.) After investigating the scene of the accident, Officer Jones had "no information at all that a tractor-trailer was in any way involved in this accident." (DSMF at ¶ 9.)

According to Mr. Knight, approximately one week after the accident, when a tractor-trailer with the word "Swift" painted on the side of its trailer passed Mr. Knight in traffic, he realized the tractor-trailer which he contends caused his accident had also had the word "Swift" painted on the side of its trailer. (DSMF at ¶ 12.) Thus, later, in deposition testimony taken on September 28, 2005, Mr. Knight identified the white tractor-trailer which he says pulled in front of his vehicle to cause the accident as belonging to defendant Swift Transportation Co., Inc. ("Swift"). (*See* Dep. of Gary Blaine Knight ("Knight Dep.") at 125, 128-30, attach. as Ex. B to Br. in Supp. of Def.'s Mot. for Summ. J. ("Summ. J.") [43].) Mr. Knight has also submitted an affidavit in response to defendant's motion for

summary judgment in which he says the same thing: that on February 3, 2005, a Swift tractor-trailer ran him off the road. (Aff. of Gary Knight ("Knight Aff."), attach. as Ex. D to Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. ("Resp. Summ. J.") [46] at ¶¶ 2-4.) Indeed, plaintiff has identified a photograph of a Swift tractor-trailer as being the truck that cut him off. *Id.*

On the same date, in close proximity to the accident, and just before Mr. Knight's wreck occurred, another driver on I-20, Victoria Hawley, called 911 to report a tractor-trailer with the word "Swift" on its rear trailer doors driving erratically and making frequent lane changes down the interstate. (Dep. of Victoria Hawley ("Hawley Dep.") at 15-18, attach. as Ex. C to Summ. J.) More specifically, Mrs. Hawley was cut off by the Swift tractor-trailer near the Salem Road exit off I-20. (Resp. Summ. J. at 2.) The exit following Salem Road is for Georgia Highway 138, where Mr. Knight's wreck occurred. (*Id.* at 3.) Mrs. Hawley was traveling in front of Mr. Knight, because when Mrs. Hawley passed the Ga. 138 exit, Mr. Knight's accident had not yet occurred. (*Id.*) However, within less than a minute of passing the exit for Ga. 138, 911 called Mrs. Hawley to indicate they had an accident reported with a tractor-trailer involved. (Hawley Dep. at 62-63.) The 911 dispatcher was calling Mrs. Hawley to ask if she could still see the tractor-trailer that she had called to report as driving erratically. (*Id.*) Mrs. Hawley

told the dispatcher that she no longer saw the tractor-trailer she had called about. (*Id.*) Mrs. Hawley never observed Mr. Knight's vehicle, either before or after the rollover accident. (DSMF at ¶ 14.) Also, Mrs. Hawley never observed the tractor-trailer she called to report as driving erratically make contact with any other vehicles or force any other vehicles off the road. (*Id.* at ¶ 15.)

On March 29, 2005, Mr. Knight and his wife, Cathy Knight, filed their Complaint in the State Court of DeKalb County, Georgia. (*See* Compl., attach. as Ex. A to Not. of Removal ("Removal") [1].) In their Complaint, plaintiffs seek to recover damages incurred for personal injuries sustained by Mr. Knight as a result of negligent ownership, operation, maintenance and/or control of the Swift tractor-trailer that they contend was the cause of Mr. Knight's rollover accident. (*See id.*) Defendant removed the action to this Court on the basis of diversity on April 22, 2005. This case is presently before the Court on defendant's motion for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go

5

beyond the pleadings" and present competent evidence[1] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is

---

[1] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II.  Defendant's Motion for Summary Judgment

In support of its motion for summary judgment, defendant argues that, even assuming that a tractor-trailer was the cause of Mr. Knight's accident, plaintiffs cannot point to any evidence showing that defendant owned or leased the tractor-truck to which a box van trailer with the word "Swift" on it was attached.[2] Defendant also argues that plaintiffs cannot point to any evidence showing that an agent or employee of defendant was driving said truck while in the course and scope of his employment. (Summ. J. at 1-2.)

In support of its position, defendant cites a series of Georgia cases establishing that identification of a logo or name on the side of a vehicle is an insufficient basis on which to infer ownership of a tractor-trailer. (*Id.* at 8.) Defendant maintains, as it has done throughout this litigation, that it did not own or have leased to it the tractor-truck that allegedly caused Mr. Knight's accident. (*Id.* at 5.)

---

[2] As do the parties, in this Order the Court refers to a tractor-truck with a trailer attached to it as a tractor-trailer.

7

In response to the above, plaintiffs argue that defendant is liable as a matter of law under the federal doctrine of "logo liability." (Resp. Summ. J. at 5.) On the basis of logo liability, plaintiffs contend that Mr. Knight's testimony that a tractor-trailer with the word "Swift" on its trailer caused his wreck creates sufficient evidence of defendant's liability to survive defendant's motion for summary judgment. (*Id.* at 7.) More specifically, plaintiffs' position is that the mere presence of a logo, like defendant's "Swift," on the truck of a tractor-trailer makes the trucking company behind that logo vicariously liable for the negligence of the driver of that truck. (*Id.* at 8, 12.) Plaintiffs insist that defendant's reliance on Georgia law is misplaced because the Georgia cases cited by defendant fail to consider the federal doctrine of logo liability, and, instead, focus on state law regarding vicarious liability. (*Id.* at 11.)

"'Logo liability' is a judicially-created doctrine that can impose statutory employer liability on the lessee of a vehicle if the lessee permits a non-employee to operate the leased equipment and that operator causes damages." *Tolliver v. Naor*, No. CIV. A. 99-0586, 2001 WL 755403, at *1 (E.D. La. July 3, 2001). In practical terms, federal courts applying the doctrine have used it to hold the party whose logo appears on the side of a truck of a tractor-trailer liable for whatever damage that truck causes, regardless of who was driving

the truck and whether the truck was or was not under lease. *See Acceptance Ins. Co. v. Canter*, 927 F.2d 1026 (8th Cir. 1991); *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir. 1983); *Simmons v. King*, 478 F.2d 857 (5th Cir. 1973). More recently however, though a few courts continue to apply the doctrine of logo liability,[3] newer cases have recognized that a change in regulations governing motor carriers made in 1986 by the Interstate Commerce Commission ("ICC") abrogated the doctrine of logo liability.[4] *See, e.g., Ross v. Wall Street Sys.*, 400 F.3d 478 (6th Cir. 2005); *Jackson v. O'Shields*, 101 F.3d 1083 (5th Cir. 1996) discussed *infra*. *See also Mercer Transp. Co. v. Greentree Transp. Co.*, 341 F.3d 1192 (10th Cir. 2003.)  In its "Discussions and Conclusions" on the 1986 amendment to its regulations concerning the return of placards containing motor carriers' identifying information (the regulation which spawned the doctrine of logo liability), the ICC stated:

> [C]ertain courts have relied on Commission regulations in holding carriers liable for the acts of equipment owners who continue to display the carrier's identification on

---

[3] *See Reliance Nat'l Ins. Co. v. Royal Indemnity Co.*, No. 99 Civ. 10920 NRB, 2001 WL 984737 (S.D.N.Y. Aug. 24, 2001); *J. Miller Express, Inc. v. Pentz*, 667 N.E.2d 1018 (Ohio Ct. App. 1995).

[4] The ICC no longer exists. "By operation of the ICC Termination Act of 1995 . . . the responsibility for regulating motor carrier transportation was vested in the Secretary of Transportation, and subsequently by delegation, in the Federal Highway Administration . . . ." *Graham v. Malone Freight Lines*, 948 F. Supp. 1124, 1128 n. 3 (D. Mass. 1996).

AO 72A
(Rev.8/82)

equipment after termination of the lease contract. We prefer that courts decide suits of this nature by applying the ordinary principles of State tort, contract, and agency law. <u>The Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist</u>. Our regulations should have no bearing on this subject. Application of State law will produce appropriate results. Our final rules are designed to make clear that our leasing rules do not and are not intended either to assign liability based on the existence of placards or to interfere with otherwise applicable State law. That is why we continue to decline to adopt the second rule originally proposed by the Conference. Specifically, we will not revise 49 C.F.R. §1057.12(c)(1) to state that a carrier is liable for the operation of the equipment by the owner-lessor only so long as the lease contract, by its own terms, remains in effect. To do so could be interpreted as an attempt to influence State law. Liability in these situations depends on a variety of factual and legal determinations outside the scope of Commission jurisdiction. Nevertheless, we repeat that our rules are not intended to influence in any fashion a court's liability determination.

Lease and Interchange of Vehicles (Identification Devices), 3 I.C.C.2d 92, 93 (1986)(emphasis added).

Guided by this change in regulations, described in detail in the above passage, the Sixth Circuit recently stated, "[i]n the past, some courts followed a doctrine of 'logo liability,' under which the presence of a carrier's government-issued placard created an irrebutable presumption that the lease continued in effect. . . However, the underlying ICC regulations have changed, and <u>this rule is no longer in effect</u>." *Ross*, 400 F.3d at 479-80 (emphasis added). Much earlier, in 1996, the Fifth Circuit drew back from its earlier

decision in *Simmons v. King*, 478 F.2d 857, 867 (5th Cir. 1973), applying logo liability because, "[i]n 1986, the ICC regulations were substantially modified." *Jackson*, 101 F.3d at 1086. In light of these changes to the ICC's regulations, the *Jackson* court concluded, the continued vitality of logo liability based decisions was "at best questionable." *Id.* at 1087.

Given all of the above, and the ICC's own declaration that it "did not intend that its leasing regulations would supersede otherwise applicable principles of state tort, contract and agency law," the Court concludes that the doctrine of logo liability is no longer viable. The doctrine of logo liability was plaintiff's only response to defendant's motion for summary judgment; that sole defense to summary judgment is without merit. Still, before granting defendant's motion, the Court also looks to Georgia law to confirm that such a result is merited.

In Georgia, evidence identifying a type of truck by the insignia or logo on its side has repeatedly been held insufficient to establish ownership of that truck. *McCoy v. Southern Bell Tel. & Tel. Co.*, 172 Ga. App. 26, 27, 322 S.E.2d 76, 77 (1984); *see also Loudermilk Enters., Inc. v. Hurtig*, 214 Ga. App. 746, 449 S.E.2d 141 (1994); *Burns v. United Parcel Serv., Inc.*, 135 Ga. App. 890, 219 S.E.2d 624 (1975). When asked to overrule the lines of cases establishing this precedent, on facts closely analogous to those

11

presented here, the Georgia Court of Appeals said the following:

> The issue in this appeal concerns the nature of proof required to sustain a verdict in a hit-and-run vehicle collision in which the only evidence supporting the plaintiff's claim is the plaintiff's testimony that, by her visual observation only, the hit-and-run vehicle had the distinctive insignia of the defendant. Acknowledging that the law in this State on this point holds that this testimony is insufficient, [plaintiff] asks us to reconsider our earlier precedents . . . We have done so and find unpersuasive [plaintiff's] argument that these cases should be overruled . . . although we appreciate the harsh effect this law may have in an individual case, we must balance that effect against the impact of imposing liability based merely upon testimony that a company's name was observed on a vehicle that allegedly caused an accident. Therefore, we decline to overrule these and the other precedents upon which these cases are based.

*Sellers v. Air Therm Co., Inc.*, 231 Ga. App. 305, 306, 498 S.E.2d 167, 168 (1998).

Here, the only evidence supporting plaintiffs' claim is Mr. Knight's testimony that a tractor-trailer marked with a "Swift" logo ran him off the road and Mrs. Hawley's testimony that, just before the accident, a tractor-trailer marked with a "Swift" logo was driving erratically down the same stretch of I-20 where the accident occurred.[5] In Georgia, this kind of testimony about a distinctive insignia on the side of vehicle is "insufficient to authorize inferences of ownership of the tractor-trailer; or that it was being operated by an agent or employee of defendant in the course of his

---

[5] Presumably, plaintiff could have sought information from defendant, during discovery.

employment." *Burns*, 135 Ga. App. at 890, 219 S.E.2d at 625 (refusing to find liability where plaintiff testified that a tractor-trailer marked with the letters "UPS" forced him off the highway).

In sum, the Court is sympathetic to plaintiff's difficulties in adducing more specific proof of the identify of the truck that allegedly cut him off. Yet, the Court must apply Georgia law. That law provides that, as plaintiffs have produced no evidence that defendant Swift owned or leased that tractor-trailer, or that one of its agents was driving the truck, plaintiff cannot prevail. Because the record, viewed in the light most favorable to plaintiffs, cannot support a finding, under Georgia law, that Swift is liable for Mr. Knight's accident, the Court **GRANTS** Defendant's Motion for Summary Judgment [43].

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [43].

SO ORDERED, this 31 day of July, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE